[No. 48544-5. En Banc. November 10, 1982.]

THE CITY OF PASCO, *Respondent,* v. DELOY E. MACE, *Petitioner.*

*Katherine M. Steele,* for petitioner.

*Greg A. Rubstello, City Attorney,* for respondent.

ROSELLINI, J.—The petitioner was charged in municipal court with the offense of soliciting for prostitution, in violation of Pasco Municipal Code 9.12.010. He filed a written demand for a jury trial, which was denied. He was tried by the municipal judge and given a 6 months' deferred sentence and 5 days in jail, 4 of which were suspended. On appeal to the superior court, he argued that RCW 35A.20-.040 (defining the jurisdiction and powers of the police judge) was invalid after the promulgation of the Rules for Appeal of Decisions of Courts of Limited Jurisdiction, which do not provide for review de novo in the superior court. His theory was that he is entitled to a jury trial, inasmuch as the offense subjects him to a possible jail sentence, and he is now denied a jury trial in both the municipal and superior courts. The trial court rejected his contention, finding that his was a petty offense and that the constitution does not guarantee a right to jury trial for such offenses.

A petition to the Court of Appeals for discretionary review was certified to this court to determine whether a defendant has a constitutional right to a jury trial in certain actions brought in municipal court, and what impact

the new RALJ has upon that right.

Prior to the adoption of these rules, persons tried in the Pasco Municipal Court pursuant to RCW 35A.20.040 and 35.22.560 had a right of appeal with a trial de novo. At the outset we must acknowledge that if the petitioner had a constitutional right to a jury trial, that right was not sufficiently protected by the statutes. Although this court in *Bellingham v. Hite*, 37 Wn.2d 652, 225 P.2d 895 (1950) held that a defendant tried in municipal court without benefit of a jury was accorded his constitutional right by an appeal de novo, that case was decided without reference to *Callan v. Wilson*, 127 U.S. 540, 32 L. Ed. 223, 8 S. Ct. 1301 (1888).[1] In the latter case, the United States Supreme Court had held that the federal jury trial guaranty was not satisfied by affording a jury on appeal, if none was provided in the first instance. The pertinent language of article 3, section 2 of the United States Constitution ("The trial of all crimes . . . shall be by jury") is substantially the same as that of our state constitution, article 1, section 22 ("In criminal prosecutions the accused shall have the right to . . . have a speedy public trial by an impartial jury"). There is no difference which would justify a holding that a jury trial is required in the first instance under the federal constitution but not under the state constitution.

In *State ex rel. O'Brien v. Towne*, 64 Wn.2d 581, 392 P.2d 818 (1964), we noticed the flaw in the *Bellingham* holding, and in *Seattle v. Filson*, 98 Wn.2d 66, 653 P.2d 608 (1982), we held directly that the state constitution protects the right to a jury at the trial level, rather than at the appellate level. Consequently, to grant a jury trial at the

---

[1] *Bellingham v. Hite, supra,* was decided before the United States Supreme Court held in *Duncan v. Louisiana*, 391 U.S. 145, 20 L. Ed. 2d 491, 88 S. Ct. 1444 (1968) that the guaranty of a jury trial contained in amendment 6 of the federal constitution is binding on the states. It had previously been held in *Cheff v. Schnackenberg*, 384 U.S. 373, 16 L. Ed. 2d 629, 86 S. Ct. 1523 (1966) that crimes carrying penalties up to 6 months do not require a jury trial if they otherwise qualify as petty offenses. *See also Ballew v. Georgia*, 435 U.S. 223, 55 L. Ed. 2d 234, 98 S. Ct. 1029 (1978).

appellate level but not at the trial level does not satisfy the constitution's demands. We must now determine whether the constitutional guaranty operates with respect to the petitioner's offense.

It was recognized by the United States Supreme Court in *Callan v. Wilson, supra,* as it was by this court in *State ex rel. Belt v. Kennan,* 25 Wash. 621, 66 P. 62 (1901); *Bellingham v. Hite, supra; State ex rel. O'Brien v. Towne, supra;* and *George v. Day,* 69 Wn.2d 836, 420 P.2d 677 (1966), that there is a class of "petty offenses" to which the constitutional jury trial guaranties do not apply.

In *State ex rel. Belt v. Kennan, supra,* this court held that the constitutional right of trial by jury is not impaired by the summary trial and punishment of a person for the violation of a city ordinance against disorderly conduct, since such constitutional guaranty does not extend to petty and minor offenses. The court quoted the following from J. Dillon, *Municipal Corporations* § 433 (4th ed. 1890):

> "Violations of municipal by-laws proper such as fall within the description of municipal police regulations, as for example those concerning markets, streets, waterworks, city officers, etc., and which relate to acts and omissions that are not embraced in the general criminal legislation of the state, the legislature may authorize to be prosecuted in a summary manner by and in the name of the corporation, and need not provide for a trial by jury. Such acts and omissions are not crimes or misdemeanors to which the constitutional right of trial by jury extends."

*Kennan,* at 625.

The offense in that case was disorderly conduct, and the maximum penalty was a fine of $50. No jail sentence was provided.

The offense involved in *Bellingham v. Hite, supra,* was driving while intoxicated. The defendant was fined $175 and sentenced to 14 days in jail. This court did not find it necessary to decide whether the offense was of such a minor nature as to justify summary trial before a single judge, but rather held that the constitutional requirement was satis-

fied by a trial de novo on appeal. As we have observed, that holding was unsound.

Nine traffic offenders were respondents in *State ex rel. O'Brien v. Towne, supra.* The opinion does not reveal whether there were possible jail sentences attached to these offenses, and the question whether an offense carrying such a possible punishment can ever be termed petty under the state constitution was not raised. In fact it was tacitly conceded that the offenses were of the class termed "petty". The central question in the case was whether the equal protection of the laws was denied by the statute, which dispensed with a jury trial in criminal cases involving violations of city ordinances.

The defendant in *George v. Day, supra,* was charged with drunk driving and reckless driving, for which the maximum punishment which a police court could impose was a fine of $300 or imprisonment for not more than 90 days. Only four judges viewed this as a petty offense. Three concurred in the result, adopting the theory of *Bellingham v. Hite, supra,* without noticing the conflict between that holding and the Supreme Court's analysis in *Callan v. Wilson, supra.* Judge Finley wrote a dissent, joined by Judge Hunter.

The dissenters believed that because of the severity of the possible sentence (including the loss of the defendant's driver license), the offense could not be deemed "petty". *See also Seattle v. Rohrer,* 69 Wn.2d 852, 420 P.2d 687 (1966), decided in the same manner. The United States Supreme Court, in *District of Columbia v. Colts,* 282 U.S. 63, 75 L. Ed. 177, 51 S. Ct. 52 (1930), said that reckless driving, so as to endanger property and individuals, is malum in se and of a serious character, amounting to a public nuisance indictable at common law, and that such a charge involves a crime for which a jury trial must be made available under the federal constitution.[2] That view accords

---

[2]The respondent in that case was charged with having operated a vehicle recklessly over the public highway at a speed in excess of 22 miles per hour. The

with that of the five judges in *George v. Day, supra,* and *Seattle v. Rohrer, supra,* who did not regard reckless driving as a petty offense.

It will be seen that, while it has said that not all offenses require a jury trial under the state and federal constitutions, and has held in one case that the offense of disturbing the peace is "petty" where the maximum penalty prescribed is a fine of $50, this court has never attempted to delineate the kinds of offenses which are exempt from the jury trial requirement.

Some opinions of the United States Supreme Court have moved in the direction of defining the meaning of "petty offense", for purposes of determining the scope of the federal right to jury trial.

*Callan v. Wilson,* 127 U.S. 540, 32 L. Ed. 223, 8 S. Ct. 1301 (1888) involved a labor union conspiracy to boycott a member who refused to pay a fine imposed by the union. The members of the conspiracy were fined $25 and given a jail term of 30 days. Conspiracy was held to be a serious crime because of its "grave character, affecting the public at large". *Callan,* at 556.

> In our opinion, the provision is to be interpreted in the light of the principles which, at common law, determined whether the accused, in a given class of cases, was entitled to be tried by a jury. It is not to be construed as relating only to felonies, or offences punishable by confinement in the penitentiary. It embraces as well some classes of misdemeanors, the punishment of which involves or may involve the deprivation of the liberty of the citizen.

*Callan,* at 549.

The Court said that it has been the custom to confer summary jurisdiction upon justices of the peace for the trial and conviction of parties for "minor and statutory" offenses. It indicated that summary proceedings were allowable even though they involve imprisonment in the county jail, provided it is for a brief and limited period.

---

maximum penalty was a fine of $100 or 30 days in jail.

The Court alluded to the

many adjudged cases, arising under [state] constitutions which declare, generally, that the right of trial by jury shall remain inviolate, [though] there are certain minor or petty offences that may be proceeded against summarily, and without a jury; and, in respect to other offences, the constitutional requirement is satisfied if the right to a trial by jury in an appellate court is accorded to the accused.

*Callan,* at 552.

The Court, however, did not discuss the latter class of cases or approve the practice. What it did hold was that, except in that class of offenses called petty, which according to the common law can be proceeded against summarily in any tribunal legally constituted for that purpose, the guaranty of trial by jury in a criminal proceeding secures the right to enjoy that mode of trial from the first moment.

In *Cheff v. Schnackenberg,* 384 U.S. 373, 16 L. Ed. 2d 629, 86 S. Ct. 1523 (1966), a criminal contempt case, the Court noted that under 18 U.S.C. § 1 (1964) any misdemeanor, the penalty for which does not exceed 6 months' imprisonment, is a petty offense. It decided to adopt that definition as its own but said that the nature of the offense may require its being excluded from the petty offense category. A jury trial is necessary, the Court said, if the sentence imposed is more than 6 months.

In *District of Columbia v. Colts, supra,* the Supreme Court said that it is primarily the nature of the offense which governs.

In *District of Columbia v. Clawans,* 300 U.S. 617, 81 L. Ed. 843, 57 S. Ct. 660 (1937), it was said that the factors to be considered are: the severity of the penalty, the moral quality of the act, and its relation to common law crimes.

The Court held that engaging in the business of selling secondhand items without a license was not indictable at common law and is but an infringement of local police regulation; that it was relatively inoffensive; and that the prescribed imprisonment of 90 days or more was not an

unusual punishment for petty offenses.

The Court recognized that standards of "action and policy" may vary from generation to generation. It said that a period of imprisonment once thought mild may come to be regarded as so harsh as to call for jury trial. The Court thought that 6 months' confinement might be too much, but that 90 days was not. It looked to state statutes and court decisions to determine whether this degree of punishment had come to be disfavored, and found that it had not. It said there was no showing that the penalty attached to the offense of selling secondhand goods without a license

> gives it the character of a common law crime or of a major offense, or that it so offends the public sense of propriety and fairness as to bring it within the sweep of a constitutional protection which it did not previously enjoy.

*Clawans,* at 630.

In *Duncan v. Louisiana,* 391 U.S. 145, 20 L. Ed. 2d 491, 88 S. Ct. 1444 (1968), the Supreme Court said that the Fourteenth Amendment guarantees a jury trial in all cases which, if tried in federal court, would come within the Sixth Amendment's guaranty. It held that a crime punishable by 2 years in prison is a serious crime, and a jury trial must be afforded if requested. Speaking of the right to jury trial, the Court said:

> Those who wrote our constitutions knew from history and experience that it was necessary to protect against unfounded criminal charges brought to eliminate enemies and against judges too responsive to the voice of higher authority. The framers of the constitutions strove to create an independent judiciary but insisted upon further protection against arbitrary action. Providing an accused with the right to be tried by a jury of his peers gave him an inestimable safeguard against the corrupt or overzealous prosecutor and against the compliant, biased, or eccentric judge. If the defendant preferred the common-sense judgment of a jury to the more tutored but perhaps less sympathetic reaction of the single judge, he was to have it. Beyond this, the jury trial provisions in the Federal and State Constitutions reflect a fundamental deci-

sion about the exercise of official power—a reluctance to entrust plenary powers over the life and liberty of the citizen to one judge or to a group of judges. Fear of unchecked power, so typical of our State and Federal Governments in other respects, found expression in the criminal law in this insistence upon community participation in the determination of guilt or innocence. The deep commitment of the Nation to the right of jury trial in serious criminal cases as a defense against arbitrary law enforcement qualifies for protection under the Due Process Clause of the Fourteenth Amendment, and must therefore be respected by the States.

*Duncan,* at 156.

But the Court said that crimes carrying penalties up to 6 months do not require a jury trial if they otherwise qualify as petty offenses.

In the recent case of *Muniz v. Hoffman,* 422 U.S. 454, 45 L. Ed. 2d 319, 95 S. Ct. 2178 (1975), the petitioner union was fined $10,000 for contempt of court. There was no jail sentence. The Court made a distinction between fines and imprisonment—and said that contempt was not a serious crime entitling the union to a jury trial. The Court looked to the circumstances to see whether the fine made the offense a serious one—in that case attaching significance to the union's ability to pay. However, the Tenth Circuit Court of Appeals refused to find "ability to pay" a significant factor in a criminal trespass case against an individual demonstrating against a nuclear plant. "A court should not condition constitutional rights on individual wealth", that court said. *United States v. McAlister,* 630 F.2d 772, 774 (10th Cir. 1980).

Thus, the Supreme Court's approach in determining the right to a jury trial in criminal cases has been to analyze each individual case to determine the seriousness of the offense and the gravity of the punishment imposed, in light of contemporary standards. It has also used the congressional expression of public policy as a guide. To require trial judges, and particularly those in courts of limited jurisdiction, burdened already with a heavy load of cases, to

undertake such complex analyses in every borderline case would be onerous.[3] As we read our state constitution, it is more specific in its requirements.

Const. art. 1, § 21 provides:

> § 21 Trial by jury. The right of trial by jury shall remain inviolate, but the legislature may provide for a jury of any number less than twelve in courts not of record, . . .

Article 4, section 10 gives the Legislature authority to define the powers, duties and jurisdiction of justices of the peace. Article 4, section 11, on the other hand, provides that the Legislature cannot make them courts of record.

Article 1, section 22 provides that in criminal cases the accused shall have the right to have a speedy public trial by an impartial jury of the county in which the offense was committed.

In construing section 21, this court has said that it preserves the right as it existed at common law in the territory at the time of its adoption. *State ex rel. Mullen v. Doherty,* 16 Wash. 382, 47 P. 958 (1897); *State v. Strasburg,* 60 Wash. 106, 110 P. 1020 (1910); *State v. McDowell,* 61 Wash. 398, 112 P. 521 (1911); *Watkins v. Siler Logging Co.,* 9 Wn.2d 703, 116 P.2d 315 (1941); *In re Marriage of Firchau,* 88 Wn.2d 109, 558 P.2d 194 (1977). We recognized in *State ex rel. Dep't of Ecology v. Anderson,* 94 Wn.2d 727, 728, 620 P.2d 76 (1980) that Const. art. 1, § 21 includes the right to jury trial in criminal cases.

It is the general rule that where the language of the state and federal constitutions is similar, the interpretation given by the United States Supreme Court to the federal provision will be applied to the state provision. *Dutil v. State,* 93 Wn.2d 84, 606 P.2d 269 (1980). However, the

---

[3]*See Baker v. Fairbanks,* 471 P.2d 386, 394 (Alaska 1970), where the Alaska Supreme Court, addressing itself to this same dilemma, said:

> In the past, courts have had difficulty in determining the qualitative difference by which an offense is to be placed in the category of serious or petty. We believe the most critical question is not where the line should be drawn, but why it should be drawn at all.

state courts are at liberty to find within the provisions of their own constitutions a greater protection than is afforded under the federal constitution, as interpreted by the United States Supreme Court. *Oregon v. Hass,* 420 U.S. 714, 719, 43 L. Ed. 2d 570, 95 S. Ct. 1215 (1975); *State v. Fain,* 94 Wn.2d 387, 617 P.2d 720 (1980); *State v. White,* 97 Wn.2d 92, 640 P.2d 1061 (1982). Here, there are significant differences not only in the language of the pertinent provisions of the state and federal documents but also in the circumstances existing at the time of their enactment. There is no federal provision similar to that clause in Const. art. 1, § 21 which confers on the Legislature power to provide for juries of less than 12 in courts not of record. This clearly contemplates that criminal cases tried in those courts are subject to jury trial requirements and that they will involve offenses less serious than those tried in courts of record.

It is evident from statements of the United States Supreme Court in *Callan v. Wilson, supra,* that there was at first some doubt as to whether the federal constitution applied at all to trials of misdemeanors. *See Callan v. Wilson,* 127 U.S. 540, 32 L. Ed. 223, 8 S. Ct. 1301 (1888). Under Washington law misdemeanors as well as violations of municipal ordinances were tried in justice courts at the time our constitution was adopted (Code of 1881, ch. 131, § 1886, p. 319),[4] and the Legislature has, since that date, consistently provided for the trial of such cases in courts of limited jurisdiction. When the United States Constitution

---

[4]"SEC. 1886. The jurisdiction of justices of the peace in criminal prosecutions, shall be co-extensive with their respective counties, and they shall have concurrent jurisdiction with the district courts in affrays, assault and battery, violation of estray laws, obstructions of highways and bridges, charging extra tolls at ferries and bridges, neglect of roads by supervisors, public indecency, having obscene books, pamphlets for exhibition or otherwise, forcible entry and detainer, malicious trespass, and in case of petit larceny, in all misdemeanors where the offense charged is not punishable by imprisonment, or by a fine greater than one hundred dollars, and public nuisance; and they shall also have jurisdiction over all criminal cases, coming under any city or town ordinance, and on conviction, shall have power to fine the person so offending in any sum not exceeding one hundred dollars." *See also* §§ 1887–1901.

was adopted in 1789, there was no statute to guide the court in determining what offenses were triable by jury at that time, and it was forced to turn to the common law for that guidance—this despite the fact that admittedly there was no federal common law. In Washington, 100 years later, the Code of 1881 was in effect and had been for some years when the constitution was drafted and accepted by the people. Code of 1881, ch. 131, § 1890, p. 320 provided:

> In all trials for offenses within the jurisdiction of a justice of the peace, the prisoner or the territory may demand a jury, which shall consist of six, or a lesser number, agreed upon by the territory and accused to be empanneled [sic] and sworn as in civil cases, or the trial may be by the justice.

This provision, in substance, is still in effect. RCW 10.04-.050.

That code defined misdemeanors as all offenses other than felonies (Code of 1881, ch. 67, § 781, p. 159). The code provided in section 785 that every person convicted of a misdemeanor, the punishment of which was not otherwise prescribed by any statute of the territory, should be punished by imprisonment in the county jail not more than 1 year, or by fine not exceeding $500, or by both. For those offenses, the code provided that a trial by a jury of six could be demanded.

It has been seen that the justice courts, at the time of the adoption of the constitution, had jurisdiction over all criminal cases coming under any city or town ordinance (for which the maximum punishment was a $100 fine), as well as over misdemeanors "where the offense charged is not punishable by imprisonment, or by a fine greater than one hundred dollars".[5] Section 1886. The code, however, auth-

---

[5] Under Const. art. 4, § 10, the Legislature was given authority to prescribe the powers, duties and jurisdiction of justices of the peace. Pursuant to that section, the Legislature has expanded that jurisdiction. See, e.g., RCW 3.20.040, giving justices of the peace jurisdiction to impose punishment by imprisonment in the county jail up to 6 months, and in other cities up to 30 days. See also RCW 3.46-.030 and RCW 3.50.020, giving municipal departments of justice courts exclusive jurisdiction over ordinances of the cities.

orized imprisonment in default of payment of fines or bail. *See* Code of 1881, ch. 131, §§ 1887, 1889, 1896, 1898.

It is evident, therefore, that the right to trial by jury which was kept "inviolate" by our state constitution was more extensive than that which was protected by the federal constitution when it was adopted in 1789. A jury trial was made available in cases of misdemeanor and municipal violations, even though no term of imprisonment was prescribed. From this, it might be concluded that the right which was preserved extended to prosecutions for every petty offense, regardless of its nature. However, it appears that in practice, juries were denied in the case of petty offenses involving little or no opprobrium and no punishment by imprisonment, as is evidenced by the case of *State ex rel. Belt v. Kennan*, 25 Wash. 621, 66 P. 62 (1901), in which this court upheld a statute providing for summary trial by police justices, where the offense was disturbing the peace, and the punishment was a $50 fine.

 From the earliest history of this state, the right of trial by jury has been treasured, and this right has been protected even in courts of limited jurisdiction. Municipal ordinances were not exempted from this constitutional protection. *See* Code of 1881, ch. 131, § 1890, p. 320. It is our conclusion that, under the concept embodied in the constitution of Washington, enacted as it was in light of the laws of the territory existing at that time, no offense can be deemed so petty as to warrant denying a jury if it constitutes a crime.

Under our present statute, crimes are defined as follows:

(1) Classified Felonies. (a) The particular classification of each felony defined in Title 9A RCW is expressly designated in the section defining it.

(b) For purposes of sentencing, classified felonies are designated as one of three classes, as follows:

(i) Class A felony; or

(ii) Class B felony; or

(iii) Class C felony.

(2) Misdemeanors and Gross Misdemeanors. (a) Any crime punishable by a fine of not more than five hundred

dollars, or by imprisonment in a county jail for not more than ninety days, or by both such fine and imprisonment is a misdemeanor. Whenever the performance of any act is prohibited by any statute, and no penalty for the violation of such statute is imposed, the committing of such act shall be a misdemeanor.

(b) All crimes other than felonies and misdemeanors are gross misdemeanors.

RCW 9A.20.010.

From this it is apparent that the definition of a misdemeanor has remained substantially the same as it was when the constitution was adopted.

At the same time, the Legislature has shown itself cognizant of the distinction between offenses which are criminal in nature and those to which such a stigma is not attached. This awareness is reflected in RCW 46.63, decriminalizing certain traffic offenses and providing a uniform and expeditious system for the disposition of these "infractions". As long as the offender commits only an infraction, no prison sentence can be imposed. RCW 46.63.060(2)(b). If it is thought that our conclusions here today will unduly burden the courts of limited jurisdiction, that situation can undoubtedly be ameliorated by legislative "decriminalization" of those offenses which are in fact regulatory, rather than criminal in nature, and limiting the penalty accordingly. As for those offenses which carry a criminal stigma and particularly those for which a possible term of imprisonment is prescribed, the constitution requires that a jury trial be afforded unless waived.[6]

---

[6]We are aware, of course, that few states have found within their constitutional provisions a right to jury trial as liberal as that which the constitution of this state discloses. We do not stand entirely alone, however. The courts of Maine and Alaska have reached similar conclusions. *See State v. Sklar,* 317 A.2d 160 (Me. 1974) and *Baker v. Fairbanks,* 471 P.2d 386 (Alaska 1970). Also, our approach is supported by a distinguished law review study, Kaye, *Petty Offenders Have No Peers!,* 26 U. Chi. L. Rev. 245 (1959) written by a practicing attorney of scholarly bent, convincingly (to our minds) challenging the doctrine espoused by Frankfurter and Corcoran in their article, *Petty Federal Offenses and the Constitutional Guaranty of Trial by Jury,* 39 Harv. L. Rev. 917 (1926), the latter having been adopted by the United States Supreme Court in *District of Columbia v.*

Here, the petitioner was charged with soliciting prostitution. The prescribed punishment for this offense consisted of a maximum sentence of 6 months in jail and/or a fine of $500. The offense was not a mere infraction or petty offense, but rather was a misdemeanor, as defined in RCW 9A.20.010. As such, it was a crime for which the defendant, upon being prosecuted, was entitled to have a jury trial. Insofar as it denied him that right, RCW 35A.20-.040 is unconstitutional.[7]

The case is remanded to the municipal court for further proceedings in accord with this opinion.

BRACHTENBACH, C.J., and STAFFORD, UTTER, DOLLIVER, WILLIAMS, DORE, DIMMICK, and PEARSON, JJ., concur.

Reconsideration denied December 22, 1982.

_Clawans,_ 300 U.S. 617, 81 L. Ed. 843, 57 S. Ct. 660 (1937).

[7]Other statutes affected by our holding today include: RCW 3.46.030; RCW 3.50.280; RCW 3.66.010; RCW 35.22.460; RCW 35.23.600; RCW 35.24.460; RCW 35.27.540. _Cf._ RCW 35.20.090.