[Nos. 13930–4–I; 15279–3–I.   Division One.   August 4, 1986.]

NORMAN W. COHEN, *Respondent,* v. THOMAS P. GRAHAM,
ET AL, *Appellants,* NORMAN W. COHEN,
ET AL, *Respondents.*

*Thomas P. Graham,* pro se, *Jeffrey S. Laws,* and *Gra-*

*ham, Laws & Dalglish; Robert Gould, Nancy K. Bourgois,* and *Gould, Russo, Eitreim & Barrett,* for appellants.

*David T. Kirkland* and *Kirkland & Coughlin,* for respondents.

GROSSE, J.—These consolidated appeals result from an arbitration award settling a dispute arising from a purchase and sale agreement between the parties. Cohen appeals the vacation of the judgment confirming the arbitration award and the trial court's finding him in contempt. In a separate appeal made prior to the vacation of the judgment, Graham appeals the confirmation of the award.

Graham and Cohen had practiced law together for approximately 15 years before deciding to dissolve their partnership. The dissolution of the law practice was not an amicable one. The parties entered into a purchase and sale agreement wherein Graham purchased an airplane and all of Cohen's interest in the law firm for $70,000. To that end, Graham executed a promissory note agreeing to pay a lump sum of $15,000 and monthly payments of $2,500 to commence on October 1, 1982, until paid in full. The agreement also provided that late payments were subject to 12 percent interest. The agreement contained a covenant not to compete which provided in pertinent part:

> Cohen agrees to leave all existing client files, excepting that pertaining to Vern Parks, with Graham & Cohen, Inc., P.S., and Cohen agrees not to contact these clients (except Parks) regarding existing legal matters, and will not handle any such matters.

Sometime in October, Graham mailed letters to clients announcing the departure of Cohen from the firm and informing them that he would be handling their cases in the future. In the meantime, Cohen had set up his own practice and learned of Graham's letters to former clients. Cohen thereupon drafted his own letter to former clients making it clear that he was willing and available to handle any of their legal matters. Several former clients brought their existing legal matters to Cohen. Many of these had

contacted Cohen prior to his letter announcing his continued availability for their legal matters.

As a result of Cohen's action, Graham ceased making the monthly payments on the promissory note. In November of 1982, Cohen brought an action in district court to collect the November payment. Graham answered and counterclaimed, removing the action to superior court and staying it pending the outcome of arbitration as required under the agreement.

Both parties were represented by counsel during the arbitration proceeding. The arbitrator found that both parties violated the agreement. It was further found that the clause in the agreement providing that Cohen "will not handle any such matters" limited Cohen's ability to practice law, was violative of CPR DR 2–108(B),[1] and contravened public policy. However, the arbitrator ruled that the clause was severable and did not void the other provisions of the agreement.

The arbitrator's award required Graham to pay 12 percent interest on all delinquent payments. This was to be offset by the sum of $5,000 which the arbitrator required Cohen to pay because of Cohen's failure to inform Graham of the work he was doing which resulted in unnecessary duplication. Although the agreement provided for mandatory attorney's fees, the arbitrator denied them on the grounds that both parties prevailed. All other claims of the parties were denied.

Under the award, however, Cohen was required to render an accounting of clients' matters which were transferred to him from the law practice after September 1, 1982, within 30 days of the award. Such fees or receipts resulting from these cases were required to be apportioned on a quantum meruit basis. If a proper apportionment could not be

---

[1]CPR DR 2–108(B) provides as follows:

"In connection with the settlement of a controversy or suit, a lawyer shall not enter into an agreement that restricts his right to practice law except in or connected with disciplinary proceedings against the lawyer."

agreed upon between the parties, the award provided for further arbitration.

Cohen moved to confirm the arbitration award except for the provision denying attorney's fees. Graham moved to vacate the award on the grounds that it was not a final award and the arbitrator's interpretation of the clause restricting Cohen's practice was an error of law.

An order confirming the arbitration award was entered on October 19, 1983. Graham appealed the confirmation of the award to this court in a timely period.

While this appeal was pending, Graham sought an accounting on those cases which were transferred to Cohen. To that end, Graham brought various motions of contempt against Cohen for failure to render an accounting in accord with the arbitration award. Cohen was found in contempt of court on at least three separate occasions. Finally, on June 27, 1984, Cohen was ordered to render an accounting by July 6, 1984, or the arbitration award would be vacated. Cohen failed to render a satisfactory accounting and the award was vacated.

### COHEN'S APPEAL

Cohen appeals the vacation of the judgment confirming the arbitration award and the trial court's order finding him in contempt. If the trial court's order vacating the judgment of confirmation is valid, then, presumably, the issues raised by Graham in his appeal from that judgment are in large part moot. Therefore, we will deal with the contempt issue first.

The issues with regard to contempt are controlled by the decision in *State v. Boatman,* 104 Wn.2d 44, 700 P.2d 1152 (1985). There, the Supreme Court reiterated three grounds on which a court may rely when using its contempt powers: (1) RCW 9.23.010; (2) RCW 7.20.010, and (3) the inherent power of the court to enforce orders. *Boatman,* at 46. Before utilizing those three grounds, it is necessary to determine whether the order is coercive or punitive. If the object of the court's action is punishment then, except

when the offensive conduct occurs in the presence of the court, the contemnor is entitled to a jury trial. If the object of the court's action is coercion then the final written order on contempt must contain provisions whereby offenders may purge themselves. *Boatman,* at 48.

In the instant matter, as in *Boatman,* it is not clear what the trial court had in mind as the basis for its contempt order. Here, because neither of the remedies provided by the two statutory grounds was utilized, the trial court's action can be sustained only if it was an exercise of the court's inherent power to punish violation of orders and judgments. However, utilization of that inherent power requires as a necessary precondition a finding by the trial court that the statutory bases will prove inadequate. *Boatman,* at 48. No such determination was made in the instant case. Even if the trial court had so found the order is defective because if intended as punishment no jury trial was provided, and if intended as coercive it contains no purging clause.

The record does support the trial court's finding that Cohen was in contempt of court. Indeed, on appeal, his counsel conceded this fact. In view of this we believe that justice will only be served on this issue by our acting to modify the judgment of contempt rather than simply vacating it. Accordingly, we order that the cause be remanded and the order on contempt be modified to include a proviso staying the enforcement of the arbitration award until such time as Cohen provides an adequate accounting as provided in the award.

## GRAHAM'S APPEAL

We turn now to the issues presented by Graham's appeal. Graham contends that the award should be vacated because it was an error of law to vacate the clause restricting Cohen's practice of law. Graham also alleges that the award was not final in that it failed to dispose of all the issues presented. We disagree and affirm the confirmation of the arbitration award.

■ The portion of the covenant not to compete which prohibited Cohen's right to handle the business of firm clients who chose to continue to have him represent them was held void for policy considerations because it was in violation of CPR DR 2-108(B). The arbitrator went on to sever what he considered to be the legal aspect of this covenant. His rationale was as follows:

> In essence, Graham was paying Cohen for Cohen's share of the professional service corporation and for the work which Cohen had already performed on the firm's unresolved cases. In light of the fact that the Purchase and Sale Agreement did not and could not prevent clients from terminating their arrangement with the firm of Graham & Cohen and seeking other representation, the real benefit of Graham's bargain lies in the following clauses: "Cohen agrees to leave all existing client files, excepting that pertaining to Vern Parks, with Graham & Cohen, Inc., P.S., and Cohen agrees not to contact these clients (except Parks) regarding existing legal matters . . ." Such clauses offer an orderly and practical transition for the dissolution of law practices, and there is nothing in public policy against employing them, so long as the client still has the right to choose which attorney will continue with the representation. The agreement *not to contact clients* with respect to existing matters was a significant part of the overall agreement and is enforceable; the agreement *not to represent clients* with respect to such matters was not central to the agreement, is unenforceable, and is severable.

Once a matter properly proceeds to arbitration any claim of error in connection with the adjudication must be decided on the face of the award. *Keen v. IFG Leasing Co.,* 28 Wn. App. 167, 174, 622 P.2d 861 (1980). The general rule is as stated in *Kennewick Educ. Ass'n v. Kennewick Sch. Dist. 17,* 35 Wn. App. 280, 281–82, 666 P.2d 928 (1983):

> [A]rbitrators, when acting under the authority granted them by both the agreement of the parties and the statutes, become the judges of both the law and the facts and, unless the award on its face shows adoption of an erroneous rule, or mistake in applying the law, the award will not be vacated or modified. *Northern State Constr.*

*Co. v. Banchero,* 63 Wn.2d 245, 249–50, 386 P.2d 625 (1963); *Moen v. State,* 13 Wn. App. 142, 144–45, 533 P.2d 862 (1975).

It cannot be said that the arbitrator's interpretation of the clause was erroneous.

The arbitrator held that both Cohen and Graham had breached the agreement. Cohen committed his breach of the agreement in a manner not wholly justified when his letter in response to Graham's letter contained a solicitation with respect to existing legal matters which was in contravention of the enforceable portions of the covenant. The arbitrator held that Cohen's breach allowed Graham to recover for any resulting damages but that Graham was not excused by Cohen's breach from his other duties arising under the agreement, principally his covenant to pay the price. For these offsetting breaches, the arbitrator awarded interest to Cohen on delinquent payments to be made by Graham and awarded Graham $5,000 as damages caused by Cohen's breach.

The other thrust of Graham's argument was that the arbitrator failed to dispose of all the issues before him such that the trial court should not have entered an order confirming the award. Both parties advanced several claims which were subject to the arbitration proceeding. Cohen's claims included damages for tortious interference with business and economic relations, wage claims, and property claims. Graham's counterclaims included malpractice indemnification, breach of fiduciary duty, and fraud. A careful review of this argument indicates that it is more one taking issue with the nature of the relief granted by the arbitrator than an allegation of error, procedural or otherwise, appearing on the face of the award. Graham's arguments here are directed at the two paragraphs in the award dealing with "all other claims" and "quantum meruit" (to which both parties had claimed a right). With respect to these two categories of claims, the arbitrator ruled that the evidence produced in the proceeding was not sufficient to support them except as set forth herein. Specifically, with

regard to quantum meruit, the arbitrator ruled that the issue was simply not ripe for arbitration.

The arbitrator disposed of all issues on which the parties had produced sufficient evidence to enable resolution and reserved for future arbitration disputes which subsequently became ripe for resolution. We cannot say the parties would have accomplished more had they proceeded to litigation in the normal course. The award was substantially sufficient in law, process, and scope. Graham not having carried his burden with respect to vacation or modification of the award entitled Cohen to the judgment confirming it.

Both parties on these consolidated appeals have requested attorney's fees. In view of the result we cannot find that either party prevailed. Therefore, neither party shall be awarded attorney's fees or costs on appeal.

SWANSON, J., and REVELLE, J. Pro Tem., concur.

Reconsideration denied October 8, 1986.

Review denied by Supreme Court March 4, 1987.